# Exhibit 8

| BAKER COUNTY SHERIFF'S OFFICE CORRECTIONS BUREAU GUIDELINES | NUMBER:<br><br>CO 378 |
|---|---|
| NUMBER OF PAGE(S):<br><br>11 | EFFECTIVE DATE:<br>03/17/20<br>Revised: 05/15/09, 03/24/10, 04/11/11, 04/02/12, 03/11/14, 02/11/15, 03/15/17, 03/29/18, 03/16/20, 09/09/22<br>Reviewed: 10/19/10, 03/07/13, 02/29/16, 02/25/19, 03/16/21, 03/14/22 |
| SUBJECT:<br><br>VISITATION | ANNUAL REVIEW DATE:<br>12/30/23 |

This guideline will be reviewed on an annual basis by the Corrections Bureau Director or designee. The review will be documented on an Office Memorandum, to the Sheriff, which outlines the review process and required updates, if any. A copy of this memorandum will be forwarded to the Professional Services Unit, which will maintain a review log of Standard Operating Guidelines.

**I.PURPOSE**:

The purpose of this Standard Operating Guideline is to comply with Florida Model Jail Standards and the Department of Homeland Security Detention Operations Standards.

**II.SCOPE**:

This Standard Operating Guideline shall apply to all Corrections Bureau Personnel.

**III.DISCUSSION**:

Visits from family members, friends, and professionals are beneficial to both inmate/detainees and the Baker County Detention Center. Visiting provides the inmate/detainee with the means by which he/she can keep in contact with personal and legal problems.

**IV.DEFINTION**:

**Video Visitation**: A visit conducted via video equipment where physical contact between the inmate/detainee and the visitor is NOT permitted. Video visitation is designated for all inmate/detainees.

**V. GUIDELINE**:

  **A**. Inmate/Detainee Visiting– General

   **1**. Once an inmate/detainee is placed in general population and first appearance has been completed he/she will become eligible for video visitation. It is the responsibility of the inmate/detainee to notify

their visitors of the rules and restrictions regarding visitation. Each inmate/detainee will receive information concerning visitation rules and regulations in the Inmate/Detainee handbook.  Visitation periods shall be permitted so that each inmate/detainee in general population has the opportunity for 3 hours of visitation each week.  Each inmate/detainee must complete and return a visitation form listing their approved visitors prior to their first initial visit.

**FMJS 9.04 (a)**

**2**. Inmate/detainee will not be denied his/her right to visit unless:

   a. The privilege has been forfeited by the inmate/detainees violation of jail rules and only after a disciplinary hearing and a finding of guilty has been concluded or;

   b. There is clear, convincing evidence that said visit would violate a court order/injunction or the security of the Baker County Detention Center or endangers the safety of staff, visitors, or inmate/detainee.

   c. Denial of any visitation will be documented.

**FMJS 9.04 (b)**

**3.**  Visitors may be searched if applicable.  All visitors will be identified according to standard requirements.

**B.** Receiving Visitors**:**

**1**. Visitors will enter the public area of video visitation.

**2**. Each visitor will be required to show picture identification prior to being allowed to visit.

Proof of identification may be in the form of:

   a. State driver's license;

   b. State identification card with photo;

   c. Agency identification card with photo;

   d. Military identification card with photo;

 Identification will be left with Corrections Staff until the completion of the visit.

**3**. No visitor will be admitted if there is a reasonable suspicion of being intoxicated or under the influence of alcohol or drugs or if their or the inmate/detainee's behavior is detrimental to the Corrections/Visitation environment.

**4**. Visitors falsifying identification information could cause the inmate/detainee to lose his/her visiting privileges either temporarily or permanently.

**5**. Any visitor attempting to bring unauthorized items into the visitation area may be escorted from the area and possibly forfeit future visitation opportunities.

**6**. Visitors are expected to dress appropriately for the visit. No short shorts, spandex, short skirts, low cut shirts, or see through clothing will be permitted. Shoes are required. Any female visitors will not be allowed to visit if braless.

**7**. Tobacco use is prohibited in the Baker County Sheriff's Office and the Baker County Detention Center.

**8**. Inmates/detainees are permitted to visit with children that are accompanied by an *ADULT who has legal authority over the child (parent/guardian).*  No children under the age of 18 will be allowed to visit without the accompaniment of an adult. The children must remain with the adult while visiting.

**9**. Each inmate/detainee is permitted a maximum of two visitors per session.

**10**. Visitors are not permitted to bring property in for an inmate/detainee. Commissary funds should be mailed to facility or visitors may deposit funds into an inmate/detainees commissary account via the kiosk in the detention facility lobby.

**11**. Visitors shall sit in the chair provided. Visitors sitting on the counters may be asked to end the visit.

**12**. Indecent exposure of any kind will not be tolerated. Violators may have visitation privileges permanently revoked.

**13**. Corrections Staff will make routine security checks after each visit is completed.

**14**. Visitors are instructed to keep the noise level to a minimum to allow other visitors uninterrupted conversation.

**15**. If a violation of the rules occurs, the Correctional Staff may give a verbal warning to the inmate/detainee and visitor. The second violation may result in termination of the visit.

**16**. Visitation times are regularly scheduled by alphabetical order. Exceptions may be made by the Bureau Director or designee.  A schedule of visitation days and times is posted in the housing areas.

**17**. At the discretion of any supervisor, the designated attorney client booth may be used for visitation purposes.  All visitation rules and requirements still apply.

**C.** Visitor Registration

**1**. All visitors will check in at the visitation counter. The Corrections staff member will check identification of the visitor and will log the visitor in with all required information on the Visitation Log Sheet. Requirements are as follows:

   a. Inmate/Detainee's Name.

   b. Date/Length of visit.

   c. Name/Address of visitor.

   d. Relationship to inmate/detainee.

   e. Date-Time In, Date-Time Out

**FMJS 9.04 (c)**

**D.** Volunteers

1. A background check will be conducted on all new volunteers prior to their being approved to provide services to inmates/detainees.

2. Each new volunteer will complete an appropriate, documented orientation program and sign an acknowledgement of his or her understanding of the applicable rules and procedures and agreement to comply with them.

3. Volunteers will be required to review and complete the PREA Orientation for Contactors and Volunteers packet prior to gaining entry into the secured housing area for the first time. The volunteer will sign the packet acknowledging that they understand the material presented.

**E.** Rules and Regulations

1. Rules and regulations governing visitor conduct at visitation and the hours of visitation are posted for visitors at the visitation entrance of the jail and the inmate/detainees in the Inmate/Detainee Handbook.

**F.** Visits by Legal Representatives and Legal Assistants (Inmate and Detainees)

1. In visits referred to as "legal visitation", each inmate/detainee may meet privately with current or prospective legal representatives and their legal assistants.

2. All legal visits must be pre-scheduled prior to the visit. Visits must be scheduled by making contact with the Detention Receptionist. Walk-in visits are not permitted.

3. Should emergency situations arise, permission to allow a walk-in visit will be at the discretion of the facility administration if the visit will be permitted.

4. Scheduled legal visitation visits are permitted seven days a week, including holidays.

5. On regular business days, legal visitations may proceed through a scheduled meal period. In such cases, the inmate/detainee shall receive a tray or sack meal after the visit.

6. On regular business days, legal visitation hours are provided for a minimum of eight (8) hours per day, and a minimum of four (4) hours per day on weekends and holidays. Scheduled visits will be permitted during regular business hours Monday through Friday from 8:30 a.m. to 5 p.m., after hours Monday through Friday from 5 p.m. to 8 p.m., and weekends (Saturday and Sunday) and holidays from 9 a.m. to 1 p.m.

7. Private consultation rooms are available for attorney meetings. There is a mechanism for the inmate/detainee and his/her representative to exchange documents in these private consultation rooms.

**G.** Persons Allowed to Visit

1. Subject to the restrictions stated below, individuals in the following categories may visit detainees to discuss legal matters:

a. Attorneys and Other Legal Representatives with a G-28 on file.

b. Legal Assistants

Upon presentation of a letter of authorization from the legal representative under whose supervision he/she is working, an unaccompanied legal assistant may meet with a detainee during legal visitation hours. The letter shall state that the named legal assistant is working on behalf of the supervising legal representative for purposes of meeting with the ICE detainee(s).

c. Interpreters

The facility will permit interpreters to accompany legal representatives and legal assistants on legal visits.

d. Messengers

The facility will permit messengers (who are not legal representatives or legal assistants) to deliver documents to and from the facility, but not to visit detainees.

2. Identification of Legal Representatives and Assistants (Local Inmates and Detainees)

a. Prior to each visit, all legal service providers and assistants shall be required to provide identification. State bar cards are the preferred forms of identification. Attorneys who are members of state bars that do not provide a bar card will be required to present other available documentation demonstrating bar membership.

b. If such documentation is not readily available to attorneys licensed in a particular state, they will be required to indicate where they are licensed as an attorney and how that fact may be verified. ICE must be contacted if this situation occurs.

c. Legal representative and legal assistant may not be asked to state the legal subject matter of the meeting.

d. A legal representative or legal assistant shall be subject to a search of his/her person and belongings for the purpose of ascertaining the presence of contraband at any time.

e. Legal Representatives and Assistants will be required to review and complete the PREA Orientation for Contactors and Volunteers packet prior to gaining entry in to the secured housing area for the first time. The Legal Representative or Assistant will sign the packet acknowledging that they understand the material presented.

3. Identification of Detainee to be visited (Detainees Only)

a. The facility will not require legal service providers to submit a detainee's A-number as a condition of visiting. The Baker County Sheriff's Office will make a good-faith effort to locate a detainee if provided with other information about the detainee.

4. Call-Ahead Inquiries (Detainees Only)

a. The Baker County Sheriff's Office will accommodate any legal representative or assistant who telephones the facility in advance of a visit to determine whether a particular individual is detained in our facility. The request must be made to the on-site ICE staff or, to the ICE office with jurisdiction over the facility. If the person seeking the information states that he/she already represents the detainee, ICE staff will confirm that the caller's name corresponds with name in the detainees' file. To protect confidentiality, where the appropriate form is not yet on file, ICE staff must be satisfied that the person making the inquiry is, in fact, a legal service provider or legal assistant who is considering representing the subject detainee in legal proceedings.

b. When unfamiliar with the person making the inquiry, ICE staff should request documentary evidence, such as a letter of request on identifying letterhead.  The ICE staff will accept such evidence by fax.  Alternatively, at the request of the caller, staff will seek the consent of the detainee for the disclosure of detention information.  In either case, ICE staff will respond to the caller as soon as possible, but in no case more than 24 hours after the call was made.

c. ICE retains the discretion to withhold this telephonic information on a case-by-case basis if it has clear and compelling articulable facts to support the belief that disclosure would endanger the national security, facility security, or the detainee.  In such circumstances, ICE staff may request further information to allay the security concerns raised and may seek the detainee's consent to the disclosure.

**5.** All other agency member visits (Detainees Only)

a. Any agency that has not been pre-approved by ICE staff will not be allowed to visit any detainee(s).  If a subject(s) arrive at the detention center and request to visit a detainee, ICE will be notified immediately.

b. Former detainees or aliens in proceedings, requesting to visit with a detainee, are referred to the Corrections Bureau Chief of Security or ICE Field Office.

**6.** The current list of pro bono legal organizations is posted in the detainee housing areas and other appropriate areas.

**7.** The decision to permit or deny a tour is not delegated below the level of the Sheriff.

**8.** Detainees can request to be seen by a doctor of his or her choice. Detainees must submit a request to medical if they wish to make an appointment with his/her private doctor for a medical visit at the Baker County Detention Facility.  Detainees are responsible for all associated costs of the visit.

**H.** Consultation Visits for Detainees Subject to Expedited Removal

**1.** General

A detainee subject to expedited removal who has been referred to an Asylum Officer is entitled by statute and regulation to consult with any persons of the detainee's choosing, both prior to the interview and while the Asylum Officer's decision is under review.

Because expedited removal procedures occur within short timeframes, each facility shall develop procedures that liberally allow the opportunity for consultation visitation in accordance with this standard.

**2.** Method of Consultation

The facility shall facilitate consultation visitation, both by telephone and face-to-face.

**3.** Persons Allowed to Visit for Consultation Purposes

Detainees subject to expedited removal may consult whomever they choose, in person or by phone, at any time, during the first 48 hours at the facility. Consultants might include, but are not limited to, attorneys and other legal representatives, prospective legal representatives, legal assistants, staff members of non-governmental organizations (NGOs), and friends and family.

All consultation visitors are subject to the same identification and security screening procedures as general visitors. If documented security concerns preclude an in-person visit with a particular individual, the facility shall arrange for consultation by telephone. If security reasons also preclude consultation by telephone, the facility shall immediately inform ICE/ERO.

**4.** Privacy

Consultation visits, in person or by telephone, receive the same privacy as communications between legal representatives and detainees.

**5.** Hours

Consultation visitation shall be allowed during legal visitation hours and during general visitation hours. However, the facility may ensure confidentiality during legal visitation hours only.

If necessary to meet demand, the facility will increase consultation visiting hours.

**6.** Duration of Consultation Period

As stated above, the consultation visitation period begins before any interview with an Asylum Officer and continues while the Asylum Officer's determination undergoes review by the Supervisory Asylum Officer or Immigration Judge.

The consultation visitation period ends with the issuance of a Notice to Appear, and the detainee's placement in removal proceedings before an Immigration Judge. However, the detainee retains legal and other visitation privileges, in accordance with this detention standard.

**7.** Admittance for Asylum Officer Interview

Detainees subject to Expedited Removal may bring and consult advisors during the Asylum Officer interview. The presence of persons to consult is also allowed during the Immigration Judge's review of a negative credible fear determination, at the judge's discretion.

**8.** Log

The legal visitation log shall record consultation visits.

**9.** Form G-28

Visitors are not required to file a Form G-28 as a condition of participating in a consultation visit or providing consultation during an Asylum Officer interview or Immigration Judge review of a negative credible fear determination. This applies even if the visitor is an attorney or legal representative.

**I.** Consular Protection

In accordance with the Vienna Convention on Consular Relations of 1963 and 8 C.F.R. § 236.1(e), detainees must be advised of their right to consular access, and the ICE/ERO must facilitate this access. ICE/ERO policy and practice require that detention facilities provide all detained individuals with notice of their rights to contact their consular representative(s) and receive visits from their consular officer(s). Additional information about consular notification and access is available online at http://travel.state.gov/CNA.

The facility shall ensure that all detainees are notified of and afforded the right to contact and receive visits from their consular officers. Such notifications shall be provided in a language or manner the

detainees understand. The same hours, privacy, and other conditions that govern legal visitation apply to consular visitation. Consular visits may be permitted at additional times outside normal visitation hours with the facility's prior authorization. To conduct such visits, consular officers must present identification issued by the U.S. Department of State.

**J.** Non-Government Organization Visitation with Detainees and Tours of Facilities

All requests by NGOs and other organizations for tours and/or visits must be submitted in writing to ICE/ERO. The request will state the exact reason for the visit and issues to be discussed. When deciding whether to approve or deny the request, ICE/ERO will take into consideration facility safety and security, and the availability of personnel to staff the tour, visitation, or tour with visitation. Access will not be denied based on the political or editorial viewpoint of the requestor.

If approved by ICE/ERO, the facility should accommodate requests in a timely manner. Tours will be scheduled at the convenience of the facility so as not to disrupt normal operations and will comply with facility security requirements.

All participants in tours or detainee visitation must provide personal information to facilitate a mandatory background check, allowing sufficient time for completion prior to entry to the facility.

**K.** Visits from Representatives of Community Service Organizations

The facility, in coordination with ICE/ERO, may approve visits to one or more detainees by representatives of community service organizations, including civic, religious, cultural, therapeutic, and other groups. Visiting procedures shall conform with the facility's visitor policy.

**L.** News Media Interviews of Inmate/Detainees

**1.** General

The Baker County Detention Center and ICE/ERO supports public access to non-classified and non-confidential information about its operations in the interest of an informed public and an accountable government.

Visits must be coordinated with the facility and ICE/ERO. Interviews by reporters, academics conducting research, and others not included in other visitation categories must be approved by ICE/ERO.

**2.** Detention Facility Visits/Tours

Media representatives may tour the facility for the purpose of preparing reports about the facilities. Facility tours shall be approved by ICE/ERO and the facility. When deciding whether to approve or deny the request, ICE/ERO will take into consideration safety and security, and the availability of personnel to staff the tour or provide security for the interview. ICE/ERO and the facility will coordinate on final approvals. Access will not be denied based on the political or editorial viewpoint of the requestor.

Following ICE/ERO approval, media representatives shall make advance appointments with the facility for visits/tours.

News organizations interested in detainee issues shall abide by the policies and procedures of the facility being visited or toured.

The facility shall advise both media representatives and detainees that use of any detainee's name, identifiable photo, or recorded voice requires his or her prior permission. Such notice to detainees shall be provided in a language or manner that they understand. Media representatives shall obtain a signed release from the detainee before photographing or recording his or her voice and the facility shall retain the signed release(s) in the detainee's detention file or retrievable electronic record.

Detainees have the right not to be photographed (still, movie, or video), and not to have their voices recorded by the media. If the presence of video, film, or audio equipment or personnel would likely cause a disruption within the facility, the facility may limit or prohibit such equipment or personnel. For example, ICE/ERO might limit the equipment to hand-held cameras or recorders.  The facility Chief of Security or higher authority will have final approval over any recording devices allowed in to the facility.

**3.** Personal Interviews

A media representative planning to conduct a personal interview at a facility shall submit a written request to ICE/ERO, preferably 48 hours and no less than 24 hours prior to the time slot requested. ICE/ERO may waive the 24-hour rule if convinced of the need for urgency.  A media representative planning to conduct a personal interview at the facility with an inmate that under federal jurisdiction (Florida USMS, Georgia USMS, Bureau of Prisons) must obtain authority from the arresting jurisdiction prior to the interview.

ICE/ERO will inform the detainee of the interview request; the detainee must indicate his or her willingness to be interviewed by signing a consent form before ICE/ERO begins to consider the request. The signed consent form shall be retained in the detainee's detention file or retrievable electronic record.

Interviews will take place during normal business hours in a location determined by the facility. The facility will provide a location conducive to the interviewing activity, consistent with security and good order. ICE/ERO may limit the number of interviews with a particular detainee to a reasonable number per month. Further, if interviews are imposing a serious strain on staff or facility resources, ICE/ERO may restrict the time allotted to interviews.

ICE/ERO and the facility reserves the right to monitor and/or supervise, but not participate in, detainee interviews.

A media representative interested in touring the facility and photographing or recording other detainees in conjunction with an individual interview must follow all applicable facility procedures.  All cameras or other recording devices must be approved prior to entry into the facility by the Sheriff or his designee.

**4.** Press Pools

When ICE/ERO and the facility determine the volume of interview requests warrants such action, a press pool may be established. All material generated from such a press pool shall be available to all news media, without right of first publication or broadcast.

The facility will notify all media representatives with pending interviews, tours/visits, or requests that, effective immediately and until further notice, all media representatives must comply with the press pool guidelines established by ICE/ERO.

ICE/ERO will, upon request, provide the media information about a detainee provided it is a matter of public record and not protected by privacy laws or ICE/ERO policy. Security and safety concerns for staff and detainee(s) require that removal-related data remain confidential.

**5.** Special Conditions

The media representative shall certify that he or she is familiar with, and accepts, the rules and regulations governing media conduct during facility interviews and visits.

Media representatives must comply with the facility's rules and regulations. The routine processing of inmate/detainees shall take precedence over media interviews. A media request shall not delay or otherwise interfere with the in-processing or departure of any inmate/detainee.

**M.** Other Special Visits

**1.** Law Enforcement Officials' Visits

Facility visitation procedures shall address law enforcement officials requesting interviews with detainees.

**2.** Visitation by Former Detainees or Aliens in Proceedings

Former ICE/ERO detainees, individuals with criminal records, and individuals in removal proceedings shall not be automatically excluded from visiting. Individuals in any of these categories must notify the facility before registering for visitation privileges. The facility shall weigh the nature and extent of an individual's criminal record and/or prior conduct against the benefits of visitation in determining visitation privileges.

**3.** Business Visitors

A detainee shall not actively engage in business or professional interests or activities. A detainee engaged in a business or profession prior to detention should assign

authority for its daily operation to a person in the community. However, in the event that a detainee must make a decision that will substantially affect the assets or prospects of a business, the facility may permit a special visit.

4. Examinations by Independent Medical Service Providers and Experts

A medical and/or psychological examination by a practitioner or expert not associated with ICE/ERO or the facility can provide a detainee with information useful in legal or administrative proceedings. Therefore, ICE/ERO will generally approve examinations for such purposes, if the requested examination would not present an unreasonable security risk.

If a detainee seeks an independent medical or physical examination, he or she (or the legal representative) shall submit a written request to ICE/ERO. The request must provide the reason(s) for requesting such an examination.

The facility shall provide a location for an independent examination approved by ICE/ERO, but will not provide medical equipment or supplies. Neither ICE/ERO nor the facility shall assume the costs of the examination, which shall be at the detainee's expense. The examination will be arranged and conducted in a manner consistent with security and good order. ICE/ERO will advise the requester, in writing, of any reasons for denying a request.

**H.** Cleaning and Sanitation of Video Visitation Area

1. Visitors are encouraged to clean their assigned visitation terminal prior to using the handset and monitor.  Sanitizing wipes will be readily available for visitors to use at time of check in with Video Visitation staff.

2. Cleaning of all video visitation terminals and handsets will be conducted by Video Visitation staff after each visit by a member of the public using disinfectant.

3. All common areas including handsets will be cleaned using disinfectant at the close of visitation each day.

**I.** Cleaning and Sanitation of Non-Contact Visitation Area

1. Visitors are encouraged to clean their assigned non-contact room prior to using the handset. Sanitizing wipes will be readily available for visitors to use at time of check in with Video Visitation staff.

2. Cleaning of all booths to include handsets will be conducted by the receptionist at the opening of the main lobby, during the noon hour, and at close of the main lobby.

APPROVED:

SCOTTY RHODEN, SHERIFF
BAKER COUNTY, FLORIDA