# Exhibit 10

September 9, 2022

Sheriff Scotty Rhoden
Baker County Sheriff's Office
1 Sheriff's Office Drive
Macclenny, FL 32063
srhoden@bakerso.com
Bsnow@bakerso.com

**RE: Denial of Access to Baker County Detention Center**

Sheriff Rhoden:

We, the undersigned attorneys, write to demand that the Baker County Sheriff's Office ("BCSO") immediately reverse its unlawful last-minute decision to deny us access to the Baker County Detention Center ("Baker") and to abruptly cancel long-scheduled legal visits and Know Your Rights trainings with clients, prospective clients, and other persons detained at the facility. Despite multiple phone and email requests for an explanation of the decision, none has been provided. Instead, Undersheriff Randy Crews responded with overt hostility. This decision clearly violates not only the 2019 National Detention Standards ("NDS," which govern Baker's operation under the Intergovernmental Service Agreement between ICE and BCSO), but also the First and Fourteenth Amendments to the U.S. Constitution—a violation for which you would be found liable (and likely charged with attorney's fees) in a federal action.

**I.     Background**

For the past several months, the ACLU of Florida and partner organizations have been investigating complaints about egregious conditions at Baker. In June, ACLU of Florida staff toured the facility and had confidential legal visits with more than a dozen detained individuals. After that visit, the ACLU of Florida began collaborating with three law school clinics and a number of pro bono attorneys to develop the Baker Legal Assistance Program—a program designed "to provide access to counsel for their immigration cases."[1]

In August 2022, the ACLU of Florida and the clinics sent ICE a formal, written request to conduct Know Your Rights presentations and in-person legal interviews at Baker. The request made clear that the visits would involve "one-on-one conversations between attorneys, legal representatives, and potential clients."[2] Because such conversations would be "privileged," the letter asked that space be made available in the law library and pods where private conversations could take place outside the earshot of Baker and ICE officers.

---

[1] Baker Legal Assistance Program, https://www.aclufl.org/en/baker-legal-assistance-program.
[2] Exhibit 1 – Request to Conduct Know Your Rights Presentations Baker County Jail.

1

On August 24, Assistant Field Office Director Cardell Smith provided notice that the request had been approved. Accordingly, the ACLU of Florida and one of the participating clinics, the Florida State University Farmworker and Immigration Rights Clinic ("FSU Clinic"), made plans to conduct the first Know Your Rights presentation on September 9. In addition to the presentation, the schedule would include a series of confidential legal visits. On August 25, the Chaplain and Programs Coordinator at Baker, Tommy Richardson, sent an email confirming that ACLU of Florida attorneys, along with FSU Clinic Director Ashley Hamill and nine law students, had been "approved [b]y ICE/ERO for a KYR Presentation" and would be allowed to visit Baker from 8:30am to 5:00pm.[3] The University of Miami Immigration Clinic obtained permission to conduct a similar visit on September 30.

At ICE's request, the ACLU of Florida and FSU Clinic submitted additional details about their visit for use in an official Stakeholder Tour/Visit Notification Flyer to be displayed at Baker.[4] The flyer makes clear that the purpose of the visit is to "[p]resent on legal rights and conduct legal screenings" and that the visit would take place in the law library and pods between 8:30 a.m. and 5:00 p.m. on September 9. The flyer includes a sign-up sheet for detained individuals to indicate they wished to meet with the ACLU of Florida and FSU Clinic during their visit.

On the morning of September 7—two days before the scheduled visit—Baker Chief of Security Captain Evelyn Blue sent an email "postpon[ing]" the visit until further notice.[5] She further stated that the visit scheduled for September 30 would be "reevaluated closer to that date." Captain Blue provided no explanation in her email for the abrupt cancellation of the presentation and legal visits. Nor did she provide any alternative dates for rescheduling.

In subsequent communications, Baker has repeatedly refused to provide any explanation for its actions. ACLU of Florida Deputy Legal Director Katie Blankenship spoke by phone with Tommy Richardson, who had spoken with Captain Blue. He indicated that the decision was final and that the attorneys and students would not be allowed in the building. Ms. Blankenship subsequently spoke to officials from ICE's Enforcement and Removal Operations ("ERO") office, who suggested, by contrast, that legal visits on Friday might still be possible. When Ms. Blankenship reached out with a list of the individuals with whom the group sought to meet, the communications from Baker grew increasingly hostile. Undersheriff Randy Crews stated in an email: "This will be the last [email] from this agency, simply stated there will be no visits tomorrow. Your continuous badgering will not change that."[6] Later that day, Undersheriff Crews sent another email refusing to schedule the legal visits because they were "not [the] original purpose for tomorrow's visit"[7]—despite the express approval to conduct legal visits, as described above.

---

[3] Exhibit 2 – Email from Tommy Richardson.
[4] Exhibit 3 – Stakeholder Tour/Visit Notification Flyer.
[5] Exhibit 4 – Emails from Captain Evelyn Blue.
[6] Exhibit 5 – Email from Undersheriff Randy Crews.
[7] Exhibit 6 - Email from Undersheriff Randy Crews.

   This morning, attorneys and law students arrived at the facility in person and were denied access by Baker employees. A supervisor informed the group that the facility did not have the space required to conduct legal visits—despite the fact that Baker had previously approved the use of the law library and pods for legal visits and that the attorney-client rooms were visibly unoccupied. Baker has refused to reconsider the decision.

## II.  Legal Violations

   The denial of access to Baker violates both the National Detention Standards and the U.S. Constitution.

   ***National Detention Standards.*** ICE's standards unequivocally guarantee detained individuals the right to access counsel. The standard on visitation makes clear that "[f]acilities shall allow detainees to meet privately with their current or prospective legal representatives and legal assistants."[8] Baker has an obligation to "permit legal visitation seven days a week, including holidays," for "a minimum of eight hours per day on regular business days, and a minimum of four hours per day on weekends and holidays."[9] Accordingly, Baker has a legal obligation to ensure that the ACLU of Florida and FSU attorneys and law students can meet with clients and prospective clients as planned.

   In addition, the standards prohibit Baker from denying individuals access to counsel as a form of punishment. A facility "may not impose or allow imposition" of certain sanctions, including "deprivation of legal visitation."[10] Although the standards do permit facilities to "temporarily restrict visiting when necessary to ensure the security and good order of the facility," Baker has not attempted to justify the cancellation of Friday's visit on those grounds. We are aware of no security rationale that could plausibly justify Baker's decision. The absence of a security justification is reinforced by the fact that Baker has already announced its intent to "reevaluate[]" the presentation scheduled for September 30—nearly three weeks from today.

   The National Detention Standards also recognize the importance of Know Your Rights presentations, providing that "[f]acilities shall permit authorized persons to make presentations to groups of detainees for the purpose of informing them of U.S. immigration law and procedures, consistent with the security and orderly operation of each facility."[11] Indeed, the standards make clear that "ICE/ERO encourages such presentations."[12] Here, the FSU Clinic followed all proper procedures to obtain approval for the presentation, including the submission of a written request for authorization. Tommy Richardson at Baker confirmed ICE/ERO's approval by email on August 25. Baker therefore had an obligation to facilitate the presentation; the National Detention Standards plainly state that "facilities are required to coordinate ICE/ERO approved presentations."[13] Approved presenters are guaranteed "a minimum of one hour to make the

---

[8] 2019 ICE Detention Standard 5.5(I).
[9] 2019 ICE Detention Standard 5.5(II)(G)(2).
[10] *Id.* at II(A)(3).
[11] *Id.* at 6.4(I).
[12] *Id.*
[13] *Id.* at 6.4(II)(B).

presentation and to conduct a question-and-answer session."[14]  Presenters are also guaranteed an opportunity to "meet with small groups of detainees to discuss their cases following a group presentation, consistent with security and the orderly operation of the facility."[15]

The standards permit a facility to "temporarily suspend" a know your rights presentation only for four specific reasons:  (1) the presentation poses an unreasonable security risk; (2) it interferes substantially with the orderly operation of the facility; (3) it deviates from the approved material, procedures, or presenters; or (4) the facility is operating under emergency conditions.  Again, Baker has made no effort to argue that any of those circumstances are present here.

***First Amendment.***  The denial of legal visits violates the First Amendment in multiple ways.  The First Amendment to the U.S. Constitution protects the rights of attorneys to provide legal advice to clients and to interview prospective clients and inform them of their legal rights.  *See, e.g.*, *In re Primus*, 436 U.S. 412, 423-26, 431 (1978); *NAACP v. Button*, 371 U.S. 415, 428-30 (1963); *Jean v. Nelson*, 711 F.2d 1455, 1508 (11th Cir. 1983).  The attorneys seeking to visit Baker thus have a constitutional right to speak to prospective clients and witnesses to inform them of their legal rights, investigate civil rights violations, and discuss the possibility of legal representation in a confidential setting.  Baker has violated the attorneys' First Amendment rights by denying access to prospective clients and witnesses who can shed light on potential constitutional violations at the facility.  In doing so, Baker has interfered with our organizations' ability to carry out a core component of their missions—namely, to protect and defend the rights of detained individuals.

Baker has also violated the First Amendment rights of the individuals who are detained at the facility and wish to speak with attorneys about their legal claims. The Supreme Court has held that both incarcerated people and the people with whom they correspond have First Amendment rights that are infringed when the government unjustifiably interferes with their communications.  *See Procunier v. Martinez*, 416 U.S. 396, 408-09 (1974), *overruled in part on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 407-08 (1989).  By precluding *all* in-person communications, Baker has unquestionably interfered with these rights.  In-person visits are critical for multiple reasons.  Most importantly, it is the only way attorneys can guarantee their conversations with detained individuals are confidential; the only alternative is to speak to individuals by phone in the law library, where a guard is regularly stationed and easily able to overhear the conversation.  Confidentiality is essential to the relationship between attorneys and clients or prospective clients—particularly in sensitive cases involving, for example, alleged misconduct by officers or requests for asylum.  Further, the ACLU of Florida and FSU Clinic have time-sensitive documents that clients and prospective clients need to review and sign with counsel—an impossibility over the telephone.  Accordingly, Baker's denial of access to legal visits violates detained individuals' First Amendment rights.  *Cf. Mitchell v. Peoples*, 10 F.4th 1226, 1229-31 (11th Cir. 2021) (a facility violates a detained person's right to free speech by engaging in conduct that undermines the confidentiality of attorney-client communications).

---

[14] *Id.*

[15] *Id.*

Finally, we are concerned that Baker's decision appears to be targeted specifically at the Know Your Rights presentations and legal visits planned as part of the Baker Legal Assistance Program, the mission of which is to remedy the mistreatment experienced by individuals detained at Baker and lack of access to counsel. To the extent that Baker is denying access only to a specific group of visitors based on the content or viewpoints it presumes those visitors will express, the decision also amounts to unconstitutional content and viewpoint discrimination in violation of the First Amendment. *See Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995). Baker has yet to provide a neutral reason for its last-minute decision, raising grave concerns that the decision seeks to retaliate against the organizations working to hold Baker accountable for misconduct and vindicate the rights of individuals who have come forward seeking our assistance.

**_Fourteenth Amendment_.** Individuals detained for civil immigration proceedings are guaranteed both procedural and substantive due process rights to counsel under the U.S. Constitution. *Dakane v. U.S. Atty. Gen.*, 399 F.3d 1269, 1273 (11th Cir. 2005) ("It is well established in this Circuit that an alien in civil deportation proceedings, while not entitled to a Sixth Amendment right to counsel, has the constitutional right under the Fifth Amendment Due Process Clause right to a fundamentally fair hearing to *effective* assistance of counsel where counsel has been obtained.") (emphasis in original);[16] *Innovation Law Lab*, 310 F. Supp. 3d 1150, 1163 (D. Or. 2018); *SPLC v. DHS*, 2022 WL 1801150 at *4-*8 (D.D.C. Jun. 2, 2022).

In *Innovation Law Lab*, plaintiffs including a legal organization sued federal agencies in a federal district court after they were "repeatedly denied access" to a civil immigration detention facility for legal visits and Know Your Rights trainings. 310 F. Supp. 3d at 1162. The court, finding that the facility had "given conflicting and nearly-impossible-to-follow instructions on the availability of legal visitation hours," *id.*, issued a temporary restraining order enjoining the defendants to provide the plaintiffs and their pro bono attorneys access to the facility for legal visits and Know Your Rights trainings, among other requirements. *Id.* at 1165.

Here, like the defendants in *Innovation Law Lab*, BCSO has denied us (and continues to deny us) access to Baker for long-scheduled legal visits and Know Your Rights presentations. And BCSO has provided conflicting and incomprehensible instructions regarding legal visits, by first confirming and then canceling those visits and presentations, and by refusing to provide an explanation for the cancellation. Like the plaintiffs in that case, we ask only that BCSO and Baker "actually provide the same degree of access to legal assistance that their own regulations purport to guarantee" through the NDS. *Id*. at 1163.

Finally, also under the Fourteenth Amendment, detained individuals have a due process right to access the courts in order to "present claimed violations of fundamental constitutional rights." *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *see Orantes-Hernandez v. Meese*, 685 F. Supp. 1488, 1510 (C.D. Cal. 1988) (individuals detained for immigration enjoy this fundamental

---

[16] The "language and policy considerations of the Due Process Clauses of the Fifth and Fourteenth Amendments are virtually identical," which apply to the federal government and to the states, respectively. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1219 n.25 (11th Cir. 2009).

5

right of access to the courts). This right encompasses the right to communicate with lawyers about potential civil rights claims. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974). Many individuals detained at Baker have meritorious civil rights claims arising from their mistreatment at the facility. By precluding confidential visits with lawyers who have spent months investigating the conditions at the facility, Baker has directly interfered with these individuals' ability to present their potential claims to the courts.

### III.     Demand for Relief

Pursuant to the above, we demand that BCSO grant the attorneys and other volunteers of the ACLU of Florida and the FSU Farmworker and Immigration Rights Clinic access to Baker this **Friday, September 9**, as previously scheduled, to conduct a Know Your Rights presentation and confidential, in-person legal visits. Should Baker continue to refuse access, we are prepared to seek appropriate redress with ICE and, if necessary, the federal courts.

Sincerely,

Katherine H. Blankenship
Deputy Legal Director
ACLU of Florida
kblankenship@aclufl.org


Juan Caballero
Director, University of Florida Immigration Clinic
caballero@law.ufl.edu


Rebecca Sharpless
Professor of Law and Director
Immigration Clinic, University of Miami School of Law
rsharpless@law.miami.edu

6

CC:

The Honorable Joseph V. Cuffari
DHS Inspector General
Office of Inspector General/Mail Stop 0305
Attn: Office of Investigations - Hotline
U.S. Department of Homeland Security
245 Murray Lane SW Washington, DC 20528-0305
dhs-oig.officepublicaffairs@oig.dhs.gov

Peter Mina, Officer for Civil Rights and Civil Liberties
Compliance Branch, Dept. of Homeland Security/Mail Stop #0190
2707 Martin Luther King, Jr. Avenue, SE
Washington, DC 20528-0190
CRCLCompliance@hq.dhs.gov
Peter.Mina@hq.dhs.gov

David Gersten, Acting Ombudsman
Office of the Immigration Detention Ombudsman/Mail Stop #0134
U.S. Dept. of Homeland Security
Washington, D.C. 20593
David.Gersten@hq.dhs.gov

Garrett Ripa, Field Office Director
Miami Field Office, Immigration and Customs Enforcement
U.S. Department of Homeland Security
865 SW 78th Avenue, Suite 101
Plantation, FL 33324
Garrett.J.Ripa@ice.dhs.gov