UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF FLORIDA, INC.,

    Plaintiff,

v.                                        Case No.: 3:22-cv-01044-TJC-LLL

BAKER COUNTY SHERIFF'S OFFICE;
SCOTTY RHODEN, Sheriff;
RANDY CREWS, Undersheriff; and
EVELYN BLUE, Captain, Corrections Division,

    Defendants.
_____/

## DEFENDANT SHERIFF SCOTTY RHODEN'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT [ECF No. 5]

Defendant SHERIFF SCOTTY RHODEN, through undersigned counsel, and pursuant to Rules 8, 10, and 12, Federal Rules of Civil Procedure, moves to dismiss Plaintiff's complaint against him, and in support, states as follows:

    1.    The following facts are taken from Plaintiff's complaint [ECF No. 5], and are presumed to be true for purposes of this motion.

    2.    Plaintiff is the American Civil Liberties Union Foundation of Florida, Inc. ECF No. 1.

    3.    The ACLU has partnered with law school clinics and pro bono attorneys to form the Baker Legal Assistance Program. ECF No. 5, ¶ 2.

    4.    Scotty Rhoden is the Sheriff of Baker County, Florida. ECF No. 5, ¶ 12.

In his official capacity, Sheriff Rhoden operates the Baker County Detention Center ("BCDC").

5. The Baker County Detention Center houses people in immigration detention pursuant to an agreement between Sheriff Rhoden and U.S. Immigration and Customs Enforcement. ECF No. 5, ¶ 16.

6. The ACLU has conducted dozens of legal interviews with immigrants detained at the Baker County Detention Center. ECF No. 5, ¶¶ 1, 12.

7. In and around August 2022, the ACLU made arrangements to provide a "Know Your Rights" presentation and conduct in-person legal interviews at the BCDC. ECF No. 5, ¶¶ 33-36. The ACLU's visit was scheduled for September 9, 2022. ECF No. 5, ¶¶ 34, 36. Another visit was scheduled for September 30, 2022. ECF No. 5, ¶ 6.

8. On September 7, 2022, Captain Evelyn Blue notified the ACLU that the September 9 visit was postponed and would need to be rescheduled. ECF Nos. 5, ¶ 38; 5-9, p. 3. The ACLU was informed that they could still schedule phone calls with individuals in immigration detention who had signed up to speak with them. ECF No. 5-9, p. 2.

9. Captain Blue told the ACLU they would not have access to the facility on September 9. ECF No. 5-9, p. 2. Undersheriff Randy Crews told the ACLU that there would be no visits on September 9. ECF No. 5, ¶ 41. Nonetheless, the ACLU

showed up on September 9, and was turned away. ECF No. 5, ¶ 43. This lawsuit followed.

10. Plaintiff's complaint purports to bring claims against the "Baker County Sheriff's Office," Sheriff Scotty Rhoden in his official and individual capacities, Undersheriff Randy Crews in his official and individual capacities, and Captain Evelyn Blue in her official and individual capacities. ECF No. 1, ¶¶ 11-14.

11. Plaintiff's complaint purports to bring claims the following claims against all Defendants:

> COUNT I
> Violation of Plaintiff's First Amendment Right to Free Speech
>
> COUNT II
> Violation of Plaintiff's First Amendment Rights – Retaliation
>
> COUNT III
> Violation of First Amendment Rights – Free Speech
> (Brought on Behalf of Detained Clients and Prospective Clients)
>
> COUNT IV
> Violation of First Amendment Rights – Retaliation
> (Brought on Behalf of Detained Clients and Prospective Clients)
>
> COUNT V
> Denial of Right of Access to the Courts in Violation of Fourteenth Amendment
> (Brought on Behalf of Detained Clients and Prospective Clients)
>
> COUNT VI
> Denial of Right to Counsel in Violation of Fourteenth Amendment
> (Brought on Behalf of Detained Clients and Prospective Clients)

COUNT [VII]
Denial of Substantive Due Process in Violation of Fourteenth Amendment
(Brought on Behalf of Detained Clients and Prospective Clients)

12. Plaintiff's claims against Sheriff Rhoden in his official capacity are due to be dismissed for failure to state a claim because Plaintiff has not alleged that Sheriff Rhoden or any of his employees have violated a federally protected right, and because Plaintiff has otherwise failed to allege facts to support any of the claims in its complaint.

13. Plaintiff's claims against Sheriff Rhoden in his individual capacity are due to be dismissed, as Plaintiff has not alleged any facts to suggest that Sheriff Rhoden was personally involved in the alleged actions, and because Sheriff Rhoden enjoys qualified immunity.

## MEMORANDUM OF LAW

In its complaint, Plaintiff alleges numerous serious complaints regarding the purported conditions at the Baker County Detention Facility. However, for purposes of the instant action, only the following have any bearing on Plaintiff's claims: that BCDC personnel postponed Plaintiff's September 9, 2022, visit to the facility, and asked that it be rescheduled; and that the facility requires that in-person legal visits be pre-scheduled. For purposes of this motion, Sheriff Rhoden takes these allegations as true but submits that neither support any claim of constitutional deprivation cognizable under 42 U.S.C. § 1983. Plaintiff's complaint is due to be dismissed for

failure to state a claim for this reason. Plaintiff's complaint is also due to be dismissed for any one of the numerous other pleading deficiencies outlined below.

### Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[;]" *Twombly*, 550 U.S. at 555 (citation omitted); and requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted). Additionally:

5

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, … (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, … (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca–Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2 (2012). The Eleventh Circuit adopts "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (*quoting Iqbal*, 556 U.S. at 679).

**COUNT I**
**Violation of Plaintiff's First Amendment Right to Free Speech**

**COUNT II**
**Violation of Plaintiff's First Amendment Rights – Retaliation**

Counts I and II are the only counts that have been brought by the ACLU, the Plaintiff in this action. For the reasons stated below, these counts fail as a matter of law, and should be dismissed.

**Plaintiff's claims against Sheriff Rhoden in his official capacity are due to be dismissed for failure to state a claim because Plaintiff has not alleged that Sheriff Rhoden or any of his employees have violated a federally protected right.**

Relief pursuant to § 1983 is appropriate only where an injury occurs as a result of a violation of an individual's "federally protected rights". *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 700-01 (1978); *see also Almand v. DeKalb County*, 103 F.3d 1510, 1512 (11th Cir. 1997) ("Section 1983 ... merely provides a remedy for deprivations of <u>federal statutory and constitutional rights</u>.") (emphasis added).

Put simply, there is no federally protected right against a corrections facility rescheduling a group visit. It is unfortunate that the BCDC needed to postpone the Baker Legal Assistance Program's September 9, 2022, visit, and Captain Blue apologized to Plaintiff for the short notice in having to reschedule. ECF No. 5-7, ¶ 8. But postponing and rescheduling a single visit does not violate the First Amendment.

Plaintiff provides only the most threadbare and conclusory assertion that needing to reschedule a group attorney visit violates the U.S. Constitution. ECF No. 5, ¶¶ 46, 59, 65. Plaintiff provides no case law to directly support its assertion, and the undersigned is unaware of any case from this Circuit (or anywhere) held as such.

Sheriff Rhoden acknowledges that Plaintiff has a right under the First Amendment to speak to clients and prospective clients regarding their legal rights and potential claims. However, Sheriff Rhoden maintains that Plaintiff does not have a

7

right to unlimited, unfettered, and unrestricted access to detainees for in-person meeting in the facility. As noted by Undersheriff Crews in his communication to Plaintiff, "[t]here are many factors we take into consideration when scheduling visits, [such as] space availability, staffing levels and other scheduled visits. Based on space the number per day is limited." ECF No. 5-7, p. 2.

Plaintiff also asserts that rescheduling a group attorney visit violates the U.S. Immigration and Customs Enforcement National Detention Standards for Non-Dedicated Facilities (rev. 2019) ("NDS"). ECF No. 5, ¶ 19. This argument is a non-starter for two reasons: first, it is belied by the very documents cited by Plaintiffs; and second, violation of detention standards – even if true – cannot support a claim brought pursuant to § 1983.

First, Plaintiff's claim that rescheduling a group attorney visit violated the NDS is facially incorrect. Of course, the NDS do contemplate that facilities will coordinate with authorized persons to present to groups of detainees to inform them of U.S. immigration law. However, the notion that once a presentation has been scheduled it cannot be postponed and rescheduled has no support in the NDS.

Plaintiff claims that the NDS "permit a facility to 'temporarily suspend' a Know Your Rights presentation only for four specific reasons…" ECF No. 5, ¶ 20. That is a misstatement of the actual standard, which provides that:

> The facility may discontinue or temporarily suspend group presentations

>by any or all presenters, if:
>
>>1. They pose an unreasonable security risk;
>>2. They interfere substantially with the facility's orderly operation;
>>3. They deviate from approved material, procedures or presenters; or
>>4. The facility is operating under emergency conditions.

ICE, National Detention Standards for Non-Dedicated Facilities, (rev. 2019), Standard 6.4, Legal Rights Group Presentations, p. 193.[1] As is clear from the plain language of the actual standard, a facility may only discontinue or temporarily suspend group presentations *altogether* if one of the four conditions is met. The standard does not prohibit postponing and rescheduling a single presentation.

But even if Standard 6.4 did prohibit postponing and rescheduling a group presentation, violating that standard would not support a claim brought under § 1983. Any rights related to presenting information regarding U.S. immigration law (or observing such a presentation) would be based on the Constitution and caselaw, not on the NDS.

To be sure, the failure to follow institutional rules and regulations asserts no violation of constitutional rights. *See, e.g., Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) ("[A] prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are

---

[1] Available at https://www.ice.gov/doclib/detentionstandards/2019/nds2019.pdf (last visited November 15, 2022).

9

nevertheless met."); *see also Harris v. Birmingham Board of Education*, 817 F.2d 1525, 1528 (11th Cir. 1987) ("[E]ven if the state statute has been violated, that does not prove a violation of a federal constitutional right. Harris must show not just a violation of a state statute, but a constitutional violation in this section 1983 action."); *Smith v. Georgia*, 684 F.2d 729, 733 n. 6 (11th Cir. 1982) ("[N]ot every violation by a state agency of its own rules rises to the level of a due process infringement.").

Plaintiff also asserts the BCDC's requirement that in-person legal visits be pre-scheduled violates both the U.S. Constitution and NDS. Once again, Plaintiff is incorrect.

No part of the U.S. Constitution gives Plaintiff a right to unfettered access to detainees. Without such a right, there can be no infringement of a right.

Moreover, this Court should be deferential to the officials running the BCDC. *See e.g. Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989) ("this court has offered considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world"). "When … the question involves the entry of people into the prisons for face-to-face communication with inmates, it is obvious that institutional considerations, such as security and related administrative problems, as well as the accepted and legitimate policy objectives for the corrections system itself, require that some limitation be placed on visitations," and that in drawing the lines as to what is reasonable, "prison

10

officials must be accorded latitude." *Pell v. Procunier*, 417 U.S. 817, 826 (1974).

Plaintiff claims that Sheriff Rhoden's policy that legal visits be pre-scheduled "conflicts with ICE's instructions for legal visits … which expressly do not require pre-scheduling for visits during normal visitation hours." First, the fact that ICE instructions do not require pre-scheduling of visits while the BCDC's policies do so require does not comprise a "conflict." But more importantly, the very ICE instructions cited by Plaintiff in its complaint [ECF No. 5, fn 10] in fact do contemplate pre-scheduling legal visits:

> Legal representatives of detainees may visit detainees
> Monday - Friday: 8:30 a.m. - 8 p.m.
> Weekends & holidays: 9 a.m. - 1 p.m.
>
> Please email legalvisits@bakerso.com or call (904) 259-3311 to coordinate visits outside of the 8:30 a.m. - 8 p.m. timeframe. Attorneys should always email or call in advance to schedule and ensure the legal visit can be accommodated on that day. **If you plan on visiting several clients in one day, you will need to schedule each visit individually.**

ICE, Baker County Facility Information[2] (emphasis in original).

The ICE instructions cited by Plaintiff even note that video teleconferencing meetings between legal representatives and clients must be pre-scheduled at least 24 hour prior to the desired appointment time. Id.

No Constitutional rights are infringed upon by the BCDC's policy and ICE's

---

[2] Available at https://www.ice.gov/detain/detention-facilities/baker-county-facility, "Hours and Visitation" (last visited November 15, 2022).

11

instructions that require pre-scheduling legal visits.

Plaintiff's First Amendment Retaliation claim (Count II) also fails. As discussed above, Plaintiff cannot establish that it has a right to unrestricted speech at the BCDC. Moreover, Plaintiff it cannot establish that Sheriff Rhoden's conduct adversely affected its speech at all.

The Eleventh Circuit has held that "[a] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005). Objectively, nobody can seriously maintain that rescheduling a presentation – not cancelling, but rather temporarily postponing – would deter anyone from exercising their First Amendment rights. It is similarly absurd to suggest that requiring in-person legal visits to be scheduled in advance would deter anyone from engaging in protected speech. Although Plaintiff recites the elements of a First Amendment Retaliation, nowhere in Count II does Plaintiff actually allege that a person of ordinary firmness would be deterred by Sheriff Rhoden's alleged actions.

Plaintiff's claim that it was "exclusively denied access" is without merit. Undersheriff Crews informed Plaintiff that many factors are considered when scheduling visits, including space availability, staffing levels, and other scheduled visits. ECF No. 5-7, p. 2. When the BCDC was unable to accommodate Plaintiff on

Friday, September 8, 2022, for these reasons, BCDC staff directed Plaintiff to call the facility and schedule meetings for the following week. Id. Again, Plaintiff was not <u>denied</u> access, it just wasn't permitted access on its own schedule and terms.

### COUNTS III - VII

The remaining Counts of Plaintiff's complaint are not brought on behalf of Plaintiff, but rather on behalf of "Detained Clients and Prospective Clients." This is improper pleading under the applicable rules. Even if Plaintiff otherwise alleged facts to establish a prima facie cause of action, Sheriff Rhoden is wholly unable to respond to allegations brought "on behalf of" unknown and unnamed individuals. To be sure, by referencing "prospective clients," it appears Plaintiff itself does not know precisely for whom these claims have been brought, and is unwilling or unable to place any limitation on same.

The Federal Rules of Civil Procedure make no provision for anonymous Plaintiffs. Rule 10 requires that "[t]he title of the complaint must name all the parties." Fed.R.Civ.P. 10. Here, Plaintiff references unnamed individuals who participated in a hunger strike, an unidentified individual with complaints regarding medical care within the facility, and unspecified individuals who "upon information and belief" appeared in proceedings without counsel. ECF No. 5, ¶¶ 23, 47, 48. Sheriff Rhoden has no way of knowing if these are the "detained clients and prospective clients" on whose behalf Plaintiff purports to seek relief in Counts II through VII. Sheriff Rhoden

13

is similarly unable to meaningfully respond to these claims, to determine if any of these "detained clients and prospective clients" have standing to bring these claims, or if any defenses to these claims may exist. Counts III through VII are due to be dismissed for this reason.

> **COUNT III**
> **Violation of First Amendment Rights – Free Speech**
> **(Brought on Behalf of Detained Clients and Prospective Clients)**
>
> **COUNT IV**
> **Violation of First Amendment Rights – Retaliation**
> **(Brought on Behalf of Detained Clients and Prospective Clients)**

Counts III and IV mirror Counts I (First Amendment) and II (First Amendment Retaliation), and should be dismissed for the same reasons.

> **COUNT V**
> **Denial of Right of Access to the Courts in Violation of Fourteenth Amendment**
> **(Brought on Behalf of Detained Clients and Prospective Clients)**

Count V purports to be an access to courts claim. As discussed above, Plaintiff's allegations do not support a claim that any detainee was denied access to court.

To the extent Plaintiff seeks to being an access to courts claim on behalf of "detained <u>clients</u>," the claim fails as a matter of law. Generally, when a detainee is represented by counsel, the right of access to courts is satisfied. *See, e.g., Jacobs v. Georgia*, 820 F. App'x 882, 887 (11th Cir. 2020) (finding the plaintiff cannot demonstrate actual injury in access to courts claim as he was represented by counsel

14

in his criminal case).

In any event, Plaintiff has not alleged facts to meet the minimum requirements for such a claim. The Eleventh Circuit has held that to establish an access to courts claim,

> a plaintiff first must show actual injury before seeking relief .... This essential standing requirement means that prison officials' actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action. To prevail, a plaintiff must provide evidence of such deterrence, such as denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials.

*Wilson v. Blankenship*, 163 F.3d 1284, 1290–91 (11th Cir. 1998)(citations omitted).

Here, Plaintiff presents only the barest of allegations that some unidentified detainees have allegedly suffered unspecified injury. This is wholly insufficient to support an access to courts claim. Count V should be dismissed.

### COUNT VI
**Denial of Right to Counsel in Violation of Fourteenth Amendment (Brought on Behalf of Detained Clients and Prospective Clients)**

Count VI purports to be a right to counsel claim. Plaintiff cites *Dakane v. U.S. Atty. Gen.*, 399 F.3d 1269, 1273 (11th Cir. 2005), for the proposition that "[i]ndividuals detained for immigration proceedings have a due process right to the effective assistance of counsel." ECF No. 5, ¶ 83. *Dakane* is a right to effective assistance of counsel case, not a right to counsel case. *Id*. ("It is well established in this Circuit that an alien in civil deportation proceedings, while not entitled to a Sixth Amendment

15

right to counsel, has the constitutional right under the Fifth Amendment Due Process Clause right to a fundamentally fair hearing to *effective* assistance of counsel where counsel has been obtained." (emphasis in original)). It has no bearing here.

As discussed above, Plaintiff's allegations do not support a claim that any detainee was denied access to counsel. To be sure, BCDC policy requiring pre-scheduling legal visits presents only a minor inconvenience that is insufficient to support this claim. Count VI should be dismissed.

### COUNT [VII][3]
**Denial of Substantive Due Process in Violation of Fourteenth Amendment (Brought on Behalf of Detained Clients and Prospective Clients)**

Counts VII is based upon Plaintiff's "belief" that individuals held in criminal custody at the BCDC "have not faced similar impediments when seeking to access legal representation…" and that Sheriff Rhoden has not "categorically refused to permit access to criminal defense attorneys seeking to speak with clients or prospective clients or canceled pre-approved, pre-scheduled legal visits."

Of course, Sheriff Rhoden has not "categorically refused to permit access" to ACLU attorneys seeking to speak with clients or prospective clients. As is clear from the face of Plaintiff's complaint and exhibits, Sheriff Rhoden has only asked that ACLU attorneys follow the same policy that applies to all legal visits at the BCDC.

---

[3] Plaintiff's compliant contains two Counts numbered VI. The second "Count VI" is referred to as Count [VII] for clarity.

Similarly, Sheriff Rhoden did not "cancel" any ACLU legal visit. Again, as is clear from Plaintiff's complaint, the BCDC had to postpone one presentation Plaintiff was scheduled to make at the facility, and asked for Plaintiff's cooperation in rescheduling same. Plaintiff does not allege, and will be unable to establish, that the BCDC has never had to reschedule criminal defense attorney visits due to space limitations or staffing availability. Plaintiff has failed to allege facts to support a substantive due process claim. Count VII should be dismissed.

**Plaintiff's claims against Sheriff Rhoden in his individual capacity are due to be dismissed because Sheriff Rhoden enjoys qualified immunity.**

Plaintiff has sued Sheriff Rhoden in his individual capacity, but has not alleged any facts to support those claims against him individually. To be sure, Plaintiff's complaint does not contain a single allegation that Sheriff Rhoden was personally involved in the decision to postpone and reschedule Plaintiff's presentation originally scheduled for September 9, 2022. Plaintiff's other claim (that legal visits must be pre-scheduled) is based on a policy of the Sheriff, which is properly brought against Sheriff Rhoden in his official capacity, not individual capacity.

In any event, Sheriff Rhoden in his individual capacity enjoys qualified immunity from all of Plaintiff's claims against him. "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional

17

rights of which a reasonable person would have known." *Gates*, 884 F.3d at 1296 (*quoting Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003)). "[O]nly in exceptional cases will government actors have no shield against claims made against them in their individual capacities." *Braddy v. Fla. Dep't of Labor & Emp. Sec.*, 133 F.3d 797, 801 (11th Cir. 1998) (*quoting Lassiter v. Ala. A&M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994) (*en banc*)).

In order to receive qualified immunity, a government official must prove he was "acting within his discretionary authority" at the time the alleged wrongful acts occurred. *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003). Discretionary authority may be proven by establishing first, that he "was performing a legitimate job related function" and second, that he pursued the function "through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). Here, it cannot be disputed that Sheriff Rhoden was acting within his discretionary authority at all times pertinent to this action.

In *District of Columbia v. Wesby*, the Supreme Court held:

> Under our precedents, officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012). "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful. [*Ashcroft v. al–Kidd*, 563 U.S. 731, 741] (*quoting Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In other words, existing law must

>have placed the constitutionality of the officer's conduct "beyond debate." *al–Kidd, supra*, at 741, 131 S.Ct. 2074. This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

*Wesby*, 138 S.Ct. at 589-90. In line with this, the Court has held, "the protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Here, Plaintiff has been unable to identify any case that would have put Sheriff Rhoden on notice that rescheduling a legal presentation or requiring in-person legal visits in a detention center be pre-scheduled violated anyone's constitutional rights. For this reason, Sheriff Rhoden in his individual capacity enjoys qualified immunity, and Plaintiff's claims against him should be dismissed for this additional reason.

WHEREFORE, Defendant Sheriff Scotty Rhoden respectfully requests this Court dismiss Plaintiff's complaint against him and award any other relief the Court deems proper.

## LOCAL RULE 3.01(g) CONFERRAL

The undersigned conferred with Plaintiff's counsel by electronic mail and can represent that Plaintiff opposes the relief sought in this Motion.

Dated this 15th day of November, 2022.

Respectfully submitted,

*/s/ Matthew J. Carson*
**MATTHEW J. CARSON (Lead Counsel)**
Florida Bar No. 0827711
E-mail: mcarson@sniffenlaw.com
**MICHAEL P. SPELLMAN**
Florida Bar No. 937975
E-mail: mspellman@sniffenlaw.com
**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 15th day of November, 2022, a true and correct copy of the foregoing was electronically filed in the US District Court, Middle District of Florida, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Matthew J. Carson*
**MATTHEW J. CARSON**