## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
FLORIDA, INC. and JOSE LUIS
MEJIA ENCARNACION,

     Plaintiffs,

                                  Case No. 3:22-cv-1044-TJC-LLL

v.

SCOTTY RHODEN, Sheriff, in his
official and individual capacities,
RANDY CREWS, Undersheriff, in
his official and individual capacities,
EVELYN BLUE, Captain,
Corrections Division, in her
individual capacity, and BAKER
COUNTY CORRECTIONS
MANAGEMENT CORPORATION,

     Defendants.

_____

# **O R D E R**

     This § 1983 First Amendment case is before the Court on three motions to dismiss. Defendant Baker County Corrections Management Corporation (BCCMC) and Defendant Sheriff Scotty Rhoden, in his official capacity, each filed motions to dismiss, (Docs. 26, 27), and Defendants Captain Evelyn Blue, Undersheriff Randy Crews, and Sheriff Scotty Rhoden, in their individual capacities, jointly filed a motion to dismiss. (Doc. 28). Plaintiffs American Civil Liberties Union Foundation of Florida, Inc. (ACLU) and Jose Luis Mejia

Encarnacion jointly responded in opposition to each motion to dismiss, (Doc. 35), and each Defendant replied (Docs. 36, 37). The parties participated in a settlement conference with a magistrate judge which resulted in an impasse (Docs. 42, 43, 50). The Court then held a hearing on the pending motions on July 1, 2024 (Doc. 62), and the parties declined returning to the settlement table (Doc. 63).

## I.   BACKGROUND

### A.   Facts[1]

The ACLU and Encarnacion, a U.S. Immigration and Customs Enforcement (ICE) detainee at the Baker County Detention Center (Baker), bring the Amended Complaint against Defendants BCCMC; Scotty Rhoden, Baker County Sheriff, in his official and individual capacities;[2] Evelyn Blue, Captain of the Corrections Division of the BCSO, in her individual capacity; and Randy Crews, Undersheriff of Baker County, in his individual capacity. (Doc. 15).

Plaintiffs allege that the ACLU has been investigating reports of constitutional violations at immigrant detention facilities, including Baker, for years, with an increased focus on Baker since May 2022. (Doc. 15 ¶¶ 41−43, 47).

---

[1] These facts, assumed as true, are taken from the Amended Complaint.

[2] Plaintiffs allege that Rhoden is the chief law enforcement official in Baker County and the final policymaker for Baker County Sheriff's Office (BCSO). (Doc. 15 ¶ 19).

In June 2022, the ACLU toured Baker and had confidential legal visits with Encarnacion and other detainees. Id. ¶ 47. During that visit, the ACLU also spoke with detainees about their concerns with the conditions at Baker within earshot of BCSO and ICE officials. Id. On July 26, 2022, the ACLU sent a letter to ICE informing it of the unsafe conditions at Baker and asking ICE to intervene. Id. ¶ 49. This letter received media coverage in north Florida. Id. In early August 2022, an interview with Rhoden aired in which he defended the facility against the allegations brought by the ACLU and other advocacy organizations. Id. ¶ 57. In the interview, Rhoden stated "[w]hat I'm not going to do is allow people to come in here and lie about our facility. . . ." Id. The news crew also interviewed the ACLU's Deputy Legal Director, who confirmed that detainees were suffering abuse at Baker. Id. ¶ 58. On August 17, 2022, the ACLU sent a public records request to BCSO seeking information about the conditions at Baker. Id. ¶ 50. At a public meeting of the BCCMC board of directors on August 18, 2022, Crews criticized the ACLU's advocacy efforts. Id. ¶ 51.

Encarnacion has also criticized the conditions at Baker by signing an administrative complaint regarding abuse in February 2022, participating in a hunger strike in protest of the conditions at Baker in May 2022, and sending an administrative complaint in May 2022. Id. ¶¶ 44–46.

The ACLU created the Baker Legal Assistance Program (BLAP) to

partner with law school clinics and pro bono attorneys to provide legal representation to ICE detainees at Baker and to provide an avenue for ICE detainees to report unconstitutional prison conditions at Baker. Id. ¶ 2. BLAP planned three visits to Baker on September 9, 2022, September 30, 2022, and October 14, 2022, to provide Know Your Rights presentations, meet with ICE detainees to assess their cases as prospective clients, meet with existing clients, and document complaints about the conditions at Baker. Id. ¶¶ 2, 65. Encarnacion was one of the clients that the ACLU planned to meet with on September 9. Id. ¶ 79. On August 25, Baker's Chaplain and Programs Coordinator approved the September 9 visit. Id. ¶ 68. However, on September 7, Blue emailed the ACLU to postpone the September 9 visit without explanation and without a rescheduled date. Id. ¶¶ 73–74. Blue wrote that the ACLU could speak with the detainees it had planned to meet with in person by scheduling phone calls instead. Id. ¶ 75. The ACLU inquired about the September 9 visit, and Crews stated that the visit was not permitted. Id. ¶¶ 79, 81–82. Nevertheless, BLAP participants consisting of the ACLU, attorneys, and law students arrived at Baker on the morning of September 9 to conduct legal visits. Id. ¶ 84. A BCSO supervisor told the BLAP group they could not conduct in-person legal visits that day because the facility did not have adequate space. Id. Plaintiffs allege this reason was false because three visible attorney-client meeting rooms were empty, remained empty, and there were no other attorneys

4

present who would be using those spaces. Id. ¶ 85. The BLAP participants ultimately left the facility without meeting with detainees. Id. ¶¶ 85–86. Because of the denied access, the ACLU could not assist clients and prospective clients with obtaining representation and addressing time-sensitive issues. Id. ¶ 96.

Plaintiffs allege that Defendants denied the ACLU access to Baker shortly after the ACLU escalated its public criticism of Baker and made the public records request. Id. ¶ 11. The Programs Coordinator informed the ACLU that the decision to postpone the September 9 visit was made by someone higher in the chain of command than Blue. Id. ¶ 76. Plaintiffs allege that the person who made the decision to postpone the visit was Rhoden because he is Blue's supervisor and because of Rhoden's statement that he would not "allow people to come in here and lie about our facility." Id. ¶ 77.

BCSO approved BLAP's September 30 visit with the ACLU in attendance, but it was postponed due to Hurricane Ian. Id. ¶ 90. BLAP's October 14, 2022 visit occurred as planned, and the ACLU attended the visit. Id. ¶ 140. BLAP attempted to reschedule both the September 9 and September 30 visits in October and November, and the ACLU intended to attend both rescheduled visits. Id. ¶ 91. However, Baker rejected BLAP's proposed rescheduled dates without providing a reason, and instead offered to reschedule the visits in December 2022 and January 2023. Id. ¶¶ 92–93. BLAP rejected Baker's

5

proposed dates because those months are inconvenient for law students. Id. ¶ 93.

Additionally, Plaintiffs allege that BCSO has a pattern and practice of opening legal mail outside of the presence of detained individuals, including Encarnacion. Id. ¶ 198. Specifically, Plaintiffs allege that Encarnacion has received opened legal mail from his attorney approximately six times. Id. ¶ 144. Plaintiffs further allege that Defendants selectively open the legal mail of detainees who speak to attorneys about the conditions at Baker. Id. ¶ 147.

Plaintiffs also allege that Defendants have a written policy that requires attorneys to notify BCSO about incoming legal mail before the legal mail arrives at Baker. Id. ¶ 131. The policy states that if attorneys do not email the facility about incoming legal mail before its arrival, the mail may be denied or delivered late. Id. Defendants have not posted this policy online and make no effort to provide advance notice of the policy to attorneys. Id. ¶ 135. Defendants started applying the policy to the ACLU around August or September 2022 without notice. Id. ¶¶ 138–39. This policy has allegedly affected: Encarnacion, who had legal mail denied and returned to his attorney; the ACLU, which had legal mail sent to Baker denied or returned; and the ACLU's other detained clients and prospective clients at Baker. Id. ¶¶ 132–134, 137–138, 142. Plaintiffs allege that Defendants selectively apply this policy to correspondence of individuals who speak to attorneys about the conditions at Baker. Id. ¶ 141.

Finally, Plaintiffs allege that Defendants refuse to ensure the confidentiality of detainees' phone calls and remote visits with their attorneys. Id. ¶ 98. On or around November 30, 2022, Defendants adopted a new policy prohibiting the scheduling of any confidential legal phone calls with Baker detainees. Id. ¶ 102. When the ACLU attempted to set up a legal call with Encarnacion on December 2, 2022, the Programs Coordinator responded that Baker was not scheduling legal calls for detainees until further notice, and instead, the ACLU could register for e-messaging or a video visit with unmonitored lines through Secured Technologies, schedule an in-person visit, or BCSO would leave a message with the ACLU's client to have the client call the ACLU. Id. ¶ 103. A BCSO employee informed other immigrants' rights organizations that BCSO had suspended legal calls because of this lawsuit. Id. ¶ 104.

Plaintiffs allege that these alternatives to a confidential legal call are insufficient because they cost money, even for indigent clients and pro bono attorneys. Id. ¶¶ 105–108. Having the detainee call the attorney is also insufficient for various reasons including because detainees can only make calls from the housing unit where other people are within earshot and because calls are limited to twenty minutes. Id. ¶¶ 109–113. In-person legal visits are not a sufficient alternative to confidential phone or video legal calls because Baker is in a remote location far from immigration attorneys or pro bono services, and,

based on the cancellation of the ACLU's visit on September 9, there is uncertainty over whether in-person visits are allowed. Id. ¶¶ 99–100, 115.

Plaintiffs also allege that before refusing to schedule legal calls, Defendants did not allow legal calls to be confidential because they had to take place in the law library where the calls could be overheard by others, including BCSO employees. Id. ¶¶ 117–23. Plaintiffs allege that Encarnacion has been forced to discuss his legal matters with his attorney on the phone in the presence of BCSO employees and other detainees. Id. ¶ 124. Plaintiffs allege that Defendants interfered with these legal calls in various other ways as well. Id. ¶ 125.

### B.    Summary of Claims and Relief Sought

All six Counts of the Amended Complaint are First Amendment claims brought under § 1983. Counts I through IV arise out of the postponement of the September 9 visit and the rescheduling of the September 9 and September 30 visits. Count V arises out of Baker's legal mail policies and Count VI arises out of Baker's legal phone call policies. See generally (Doc. 15).

- Count I (Postponed Visit): Defendants violated the ACLU's right to free speech by denying their right to speak to detainees.

- Count II (Postponed Visit): Defendants violated the ACLU's right to freedom from retaliation.

- <u>Count III (Postponed Visit)</u>: Defendants violated Encarnacion's, Detained Clients', and Prospective Clients' right to free speech by inhibiting them from meeting with BLAP attorneys.

- <u>Count IV (Postponed Visit)</u>: Defendants violated Encarnacion's, Detained Clients', and Prospective Clients' rights to freedom from retaliation.

- <u>Count V (Legal Mail Policies)</u>: Rhoden, in his official and individual capacities, and BCCMC, violated Plaintiffs' rights by opening legal mail outside the detainees' presence and by precluding the delivery of legal mail to detainees without a prior verification email.

- <u>Count VI (Legal Phone Call Policies)</u>: Rhoden, in his official and individual capacities, and BCCMC, violated Plaintiffs' rights to free speech by failing to provide access to confidential legal calls.

Plaintiffs seek (1) a declaration that Defendants' conduct violates Plaintiffs' First and Fourteenth Amendment rights; (2) an injunction prohibiting Defendants from subjecting Plaintiffs to the unlawful acts described in the Amended Complaint; (3) compensatory, punitive, and nominal damages; and (4) reasonable attorneys' fees, costs, and interest. <u>Id.</u> at 68.

## II.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of allegations in the complaint. Federal Rule of Civil Procedure 8(a)(2) requires that a claim for relief contain "a short and plain

9

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. Twombly, 550 U.S. at 555.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. See Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010).

## III.   DISCUSSION

### A.   BCCMC — All Counts

BCCMC argues that all six Counts against it should be dismissed for many reasons, see generally (Doc. 26), but the Court need address only one: Plaintiffs improperly lumped all the Defendants together without identifying the separate acts of BCCMC. (Doc. 26 at 7–9).

The Eleventh Circuit has referred to complaints that violate Rule 8(a)(2) as "shotgun pleadings." Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015). One type of impermissible shotgun pleading is one that "assert[s] multiple claims against multiple defendants without specifying

which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Id. at 1323. Shotgun pleadings are subject to dismissal because they do not "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Id. However, "a dismissal under Rule[] 8(a)(2). . . is appropriate [only] where 'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" Id. at 1325 (quoting Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996)). A complaint that accuses defendants collectively may survive dismissal under Rule 8(a)(2) where "[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." Kyle K. v. Chapman, 208 F.3d 940, 944 (11th Cir. 2000).

Plaintiffs allege that BCCMC is a nonprofit corporation, with a board appointed by the Baker County Board of County Commissioners, that owns Baker and is responsible for the facility's operations and management. (Doc. 15 ¶¶ 23, 36). Plaintiffs allege that BCCMC has delegated the authority to operate Baker to BCSO, but BCCMC retains the right to monitor the facility and to intervene if BCSO is not operating the facility in accordance with applicable standards. Id. ¶¶ 38–40.

The Amended Complaint repeatedly attributes the alleged acts of wrongdoing to "Defendants" without differentiating among them. For example:

"Defendants denied detained individuals, including [Encarnacion], the ability to meet with attorneys. . . ." Id. ¶ 181. The only mention of BCCMC's liability in each Count is: "[u]pon information and belief, Defendant BCCMC has failed to exercise any oversight to prevent violations of the Constitution and the [ICE National Detention Standards] and has failed to take any steps to hold Defendants responsible for such violations." Id. ¶¶ 166, 177, 184, 193.[3]

BCCMC argues that "this action hinges on the conduct by the person/entity that instituted certain policies, cancelled the alleged legal visits, or opened the alleged legal mail. Without clear specification of who the person/entity was, BCCMC is unable to respond in an educated manner." (Doc. 26 at 9). In response, Plaintiffs argue that they do not improperly lump Defendants together because they allege that Rhoden made the decision to deny access to Baker and implemented the mail and phone policies, Blue and Crews executed Rhoden's decision to deny access to Baker, and BCCMC failed to intervene. (Doc. 35 at 45–46). Thus, Plaintiffs are apparently only seeking to hold BCCMC responsible for failing to prevent the wrongdoing of the other Defendants. If Plaintiffs are only seeking to hold BCCMC responsible for failing to prevent the wrongdoing of other Defendants, it is unclear upon which theory

---

[3] Counts V and VI contain the same sole reference to BCCMC, but allege that BCCMC failed to hold Rhoden, rather than all Defendants, responsible. Id. ¶¶ 204, 214.

of liability Plaintiffs base their allegations.

In any event, as discussed at the hearing, the Court is unpersuaded that BCCMC is a necessary or proper party to this case. Plaintiffs can achieve full relief against the remaining Defendants. Therefore, the Court will dismiss all claims as to BCCMC with prejudice.[4]

### B.    Detained Clients and Prospective Clients

Plaintiffs bring Counts III–VI on behalf of unnamed "detained clients and prospective clients." See generally (Doc. 15). Plaintiffs allege that the ACLU has third-party standing to assert a First Amendment claim on behalf of these individuals because "[i]n addition to experiencing harm as an organization, the [ACLU] has a 'close relationship' with the individuals at Baker who wished to meet with [BLAP] about potential legal claims, and these individuals' ability to protect their own rights is hindered by Defendants' denial of access." (Doc. 15 at ¶¶ 185, 194, 203, 213).

Defendants argue that the claims brought on behalf of the unnamed detained clients and prospective clients of the ACLU violate Federal Rule of Civil Procedure 10(a) because the Amended Complaint does not name all the

---

[4] The remaining Defendants do not argue that the Amended Complaint should be dismissed for lumping the Defendants together. The Court declines to dismiss on this basis sua sponte, because without BCCMC, the Amended Complaint "can be fairly read to aver that all [the remaining] [D]efendants are responsible for the alleged conduct." Chapman, 208 F.3d at 944.

parties. <u>See</u> (Doc. 27 at 15–16, 17,18).[5] Defendants argue that because they do not know who the unnamed detainees are, they cannot meaningfully respond to the claims. <u>Id.</u> In response, Plaintiffs argue that Rule 10 does not prohibit them from bringing claims on behalf of the unnamed detainees if they can establish third-party standing, which they claim they have done. (Doc. 35 at 48–50).

Generally, a party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." <u>See</u> <u>Kowalski v. Turner</u>, 543 U.S. 125, 129 (2004) (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 499 (1975)). However, "there may be circumstances where it is necessary to grant a third[-]party standing to assert the rights of another." <u>Id.</u> at 129–30. When a party seeks third-party standing, they must show that "the party asserting the right has a 'close' relationship with the person who possesses the right," and that "there is a 'hindrance' to the possessor's ability to protect his own interests." <u>Id.</u> at 130 (quoting <u>Powers v. Ohio</u>, 499 U.S. 400, 411 (1991)). The Supreme Court has permitted third-party standing in First Amendment cases, <u>id.</u>, and when "enforcement of the challenged restriction <u>against the litigant</u> would result indirectly in the violation of third parties' rights," <u>id.</u> at 131 (describing <u>U.S. Dep't of Lab. v. Triplett</u>, 494 U.S. 715 (1990)).

---

[5] Rhoden, Blue, and Crews, in their individual capacities, adopted the arguments of Rhoden in his official capacity. <u>See</u> (Doc. 28 at 1–2). Thus, when appropriate, the Court cites Rhoden, in his official capacity's Motion (Doc. 27) for arguments brought by all Defendants (excluding BCCMC).

ACLU has alleged the requisite "closeness" with their existing detained clients, and that those clients are hindered from protecting their own interests. See generally (Doc. 15). However, the Supreme Court has held that attorneys do not have third-party standing to bring claims on behalf of future unascertained clients, and clarified that Triplett involved the representation of known clients. Kowalski, 543 U.S. at 130–31, 134. Accordingly, Plaintiffs may proceed on behalf of the unnamed detainees with whom they have an established attorney-client relationship, but they may not proceed on behalf of unascertained unnamed detainees with whom they do not have an existing attorney-client relationship.

### C.   Individual Capacity Claims and Qualified Immunity

Rhoden, Blue, and Crews, in their individual capacities, argue that Plaintiffs have failed to state a claim and that they are entitled to qualified immunity for all claims against them.[6] See generally (Doc. 28). A defendant asserting qualified immunity must first show "that he or she was acting within his or her discretionary authority," then "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Myrick v. Fulton Cnty., 69

---

[6] "Qualified immunity 'is only a defense to personal liability for monetary awards resulting from government officials performing discretionary functions,' and 'may not be effectively asserted as a defense to a claim for declaratory or injunctive relief.'" Benning v. Comm'r, Georgia Dep't of Corr., 71 F.4th 1324, 1335 (11th Cir. 2023) (quoting Ratliff v. DeKalb Cnty., 62 F.3d 338, 340 n.4 (11th Cir. 1995)).

F.4th 1277, 1297 (11th Cir. 2023) (citations omitted). The parties do not dispute that Rhoden, Blue, and Crews were acting within their discretionary authority.

To evaluate a claim of qualified immunity, the Court must ask: "(1) whether, taken in the light most favorable to the injured party, the facts alleged show the [official's] conduct violated a constitutional right; and (2) if the right violated under those alleged facts was clearly established at the time of the alleged violation." Id. (citing Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)). "For a plaintiff to overcome a claim of qualified immunity, both questions must be answered affirmatively." Id.

### 1. Postponed Visit: Denial of Access Claims (Counts I and III)

A prisoner retains all First Amendment rights that "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Mitchell v. Peoples, 10 F.4th 1226, 1229 (11th Cir. 2021) (quoting Turner v. Safley, 482 U.S. 78, 95 (1987)). When prison officials "chill, inhibit, or interfere" with a prisoner's ability to "speak, protest, and complain openly to his attorney," they infringe on the prisoner's right to free speech. Id. at 1230 (quoting Al-Amin v. Smith, 511 F.3d 1317, 1334 (11th Cir. 2008)). Additionally, free citizens have a First Amendment right to communicate with prisoners. Thornburgh v. Abbott, 490 U.S. 401, 407 (1989). Access to prisons, whether in person or through writing, "is essential to lawyers and legal assistants representing prisoner clients." Id.

16

However, the judiciary is "'ill equipped' to deal with the difficult and delicate problems of prison management," and therefore courts should afford "considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." Id. at 407–08 (citations omitted). Thus, "[w]hen a prison regulation or policy 'impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" Pesci v. Budz (Pesci II), 935 F.3d 1159, 1165–66 (11th Cir. 2019) (quoting Turner, 482 U.S. at 89 (1987)). There are four factors relevant to the reasonableness inquiry (the Turner factors):

> (1) whether there is a "valid, rational connection" between the regulation and a legitimate governmental interest put forward to justify it;
> (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates;
> (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and
> (4) whether the regulation represents an "exaggerated response" to prison concerns.

Pesci II, 935 F.3d at 1166 (citations omitted).[7]

---

[7] This standard is not only reserved for cases involving inmates' rights; it is also applicable to cases involving the rights of non-prisoners who have a legitimate First Amendment interest in access to prisoners. See Thornburgh, 490 U.S. at 407–09, 413–414 (applying Turner to prison regulations limiting the access of publishers to prisoners); see also Overton v. Bazzetta, 539 U.S. 126 (2003) (applying Turner to prisoners and non-prisoners challenging a prison

Immigration detention is civil rather than criminal. See, e.g., Zadvydas v. Davis, 533 U.S. 678, 690 (2001); Danglar v. Dep't of Corr., 50 F.4th 54, 55 (11th Cir. 2022). The Eleventh Circuit has held that the Turner standard applies to civil detainees, but "the range of legitimate governmental interests is narrower," and "retribution and general deterrence" are not "a proper foundation for the restriction of civil detainees' constitutional rights." Pesci II, 935 F.3d at 1166 (quoting Pesci v. Budz (Pesci I), 730 F.3d 1291, 1297 (11th Cir. 2013)). However, "'institutional order, safety, and security' remain paramount in the civil detention context.'" Id. (quoting Pesci I, 730 F.3d at 1298).

Rhoden, Blue, and Crews argue that Plaintiffs have not alleged the violation of a constitutional right because, although the ACLU has a First Amendment right to speak to detainees, it "does not have a constitutionally-protected right to unlimited, unfettered, and unrestricted access to detainees for in-person meeting[s] in the facility," and "rescheduling a group visit is not a violation of anyone's constitutional rights." (Doc. 27 at 10, 12, 16).[8] Rhoden,

_____

visitation policy).

[8] Defendants also argue several other reasons Plaintiffs fail to allege the violation of a constitutional right: Defendants did not violate the National Detention Standards, but even if they did, violation of those standards does not support a § 1983 claim; the Constitution does not require a detention facility to consider law school calendars when scheduling large group visits; the Court should be deferential to the officials running Baker; contractual obligations do

Blue, and Crews argue that they were not "on notice that rescheduling a legal presentation in a detention center violated anyone's constitutional rights." (Doc. 28 at 4–5). In response, Plaintiffs argue that Defendants violated their constitutional rights without justification and Defendants had "notice that their denial of access on September 9, 2022 violated not just their own policies and applicable standards but, most importantly, the United States Constitution." (Doc. 35 at 9–14, 20–22, 42–43).

### i. Violation of a Constitutional Right

The ACLU and its detained clients, including Encarnacion, have First Amendment rights to communicate with each other, <u>Mitchell</u>, 10 F.4th at 1230; <u>Thornburgh</u>, 490 U.S. at 407, but the facts alleged here do not rise to the level of a constitutional violation. The September 9 meeting was canceled and postponed for no stated reason. The September 30 meeting was also postponed due to a hurricane. The October 14 meeting went forward as scheduled. BLAP attempted to reschedule the September 9 and 30 meetings for October and November, but Baker instead offered dates in December and January. While this rescheduling was no doubt inconvenient and perhaps frustrating, it is not the stuff of a First Amendment violation. Indeed, Plaintiffs have cited no case

---

not support a § 1983 claim; and ICE never sustained a complaint that Baker was in non-compliance with the National Detention Standards. <u>See generally</u> (Doc. 27).

that would support finding a First Amendment violation on these facts.[9]

Additionally, one canceled prison visit and two postponements do not amount to a prison regulation or policy that warrants analysis under the modified <u>Turner</u> standard. <u>Cf.</u> <u>Swain v. Junior</u>, 958 F.3d 1081, 1085 (11th Cir. 2020) (emphasis added) (appeal concerning the adequacy of the **measures** implemented by a detention center to protect its prisoners from the spread of COVID-19); <u>Rodriguez v. Burnside</u>, 38 F.4th 1324 (11th Cir. 2022) (emphasis added) (First Amendment challenges to a prison's shower **policies**), <u>cert. denied</u>, 143 S. Ct. 1780 (2023). However, even assuming this is a prison regulation or policy, for the reasons just stated, it does not amount to a constitutional violation under <u>Turner</u>. Because the Court has determined that there is no constitutional violation alleged, it will not engage in a "clearly established" analysis.

Accordingly, Rhoden, Blue, and Crews, in their individual capacities, are entitled to qualified immunity on Counts I and III to the extent Plaintiffs seek monetary damages. Also, Plaintiffs may not proceed with their claims in Counts I and III against Rhoden, Blue, and Crews, in their individual capacities, for declaratory and injunctive relief because Plaintiffs have not plausibly alleged these Defendants violated Plaintiffs' First Amendment rights. <u>Cf.</u> <u>Benning</u>, 71

---

[9] Of course, on more compelling facts, a First Amendment violation might lie.

F.4th at 1335.

### 2. Postponed Visit: Retaliation Claims (Counts II and IV)

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." Bell v. Sheriff of Broward Cnty., 6 F.4th 1374, 1376−77 (11th Cir. 2021) (quoting Nieves v. Bartlett, 587 U.S. 391, 398 (2019)). To state a claim for First Amendment retaliation, a plaintiff must allege: "first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." Christmas v. Nabors, 76 F.4th 1320, 1333 (11th Cir. 2023) (quoting Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008)).

There is no question that Plaintiffs engaged in protected speech when they publicly criticized the Baker County jail operation. Neither is the causal connection element of a retaliation claim contested. Only the second element is at issue here. To satisfy the second element, a plaintiff must allege that "the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Bennett v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005) (citations omitted), cert. denied, 549 U.S. 809 (2006). "The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it

need not be great in order to be actionable." Id. (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982)). However, the injuries complained of must be more than "de minimis inconvenience in the exercise of First Amendment rights." Id. at 1253.

Rhoden, Blue, and Crews argue that their conduct did not adversely affect Plaintiffs' speech, nor would it have deterred anyone from exercising their First Amendment rights. See (Doc. 27 at 13–14, 16). In response, Plaintiffs argue that Defendants' actions adversely affected their protected speech because canceling the September 9 visit was an adverse action, "[a] plaintiff need not be 'actually chilled' in the exercise of their rights" to show an adverse action, and the denial of access to Baker was highly likely to deter the exercise of First Amendment rights. (Doc. 35 at 14–17, 22–24). Plaintiffs also argue that case precedent and the ACLU's demand letter provided Defendants notice that retaliation for the exercise of First Amendment rights is unlawful. Id. at 42–43.

### i. Violation of a Constitutional Right

Plaintiffs have sufficiently alleged that Rhoden, Blue, and Crews, in their individual capacities, retaliated against them in violation of the First Amendment. Plaintiffs have alleged that their speech criticizing Baker was constitutionally protected, that Rhoden, Blue, and Crews' retaliatory conduct adversely affected Plaintiffs' protected speech, and that there is a causal connection between the retaliatory conduct and the adverse effect on Plaintiffs'

speech.[10] See Nabors, 76 F.4th at 1333. Construing all reasonable inferences in favor of the Plaintiffs, the alleged retaliatory cancellation or postponement of BLAP's visit to Baker would "chill a person of ordinary firmness from exercising his or her First Amendment rights." Bennett, 423 F.3d at 1255. The effect of the postponed visit on Plaintiffs' speech was small because the ACLU was subsequently scheduled to make up the missed visit on September 30, (Doc. 15 ¶ 90), but the effect was more than de minimis because detainees allegedly had time-sensitive legal matters to discuss with the ACLU attorneys (id. ¶ 96), and confidential phone calls were allegedly not a viable alternative to in-person visits (id. ¶¶ 117–129). These allegations are enough to satisfy the objective "ordinary firmness" test. Bennett, 423 F.3d at 1255. Thus, at this stage in the case, Plaintiffs have sufficiently alleged that Rhoden, Blue, and Crews, in their individual capacities, retaliated against them in violation of the First Amendment.

### ii. Clearly Established Right

Plaintiffs have also sufficiently alleged that their rights to be free from retaliation under the First Amendment were clearly established. It is "settled law that state officials may not retaliate against associations and individuals

---

[10] Defendants only attack the sufficiency of Plaintiffs' allegations that Defendants' conduct adversely affected Plaintiffs' protected speech. See generally (Docs. 27, 28). Thus, the Court only discusses this element of the First Amendment retaliation claim.

for their exercise of First Amendment rights." Ga. Ass'n of Educators v. Gwinnett Cnty. Sch. Dist., 856 F.2d 142, 145 (11th Cir. 1988). The Eleventh Circuit has held that this right applies to prisoners and detainees as well. See, e.g., Nabors, 76 F.4th at 1333 (quoting Yates, 535 F.3d at 1321) ("Prison officials violate a prisoner's 'First Amendment rights to free speech and to petition the government' by punishing that prisoner 'for filing a grievance concerning the conditions of his imprisonment.'"). Therefore, Plaintiffs have sufficiently alleged that Rhoden, Blue, and Crews "were on notice and had 'fair warning'" that these Defendants' actions violated the Plaintiffs' right against retaliation. See Bennett, 423 F.3d at 1256 (citing Ga. Ass'n of Educators, 856 F.2d at 145). Accordingly, Rhoden, Blue, and Crews, in their individual capacities, are not entitled to qualified immunity on Counts II and IV and the Motion to Dismiss is due to be denied as to these Counts.

### 3. Legal Mail Policies (Count V)

An inmate's right to free speech entitles him to use the mail to communicate confidentially with his or her attorneys. Mitchell, 10 F.4th at 1230. The Eleventh Circuit has long held that prison officials violate a prisoner's First Amendment right to free speech when they open properly marked legal mail outside the detainee's presence. Id. at 1229.

Rhoden, in his individual capacity, argues that Plaintiffs do not allege he

24

was personally involved in the issues alleged in Count V,[11] and that he is entitled to qualified immunity.[12] <u>See generally</u> (Doc. 28). In response, Plaintiffs do not address the allegations in Count V against Rhoden in his individual capacity. <u>See generally</u> (Doc. 35). Nor do they address Rhoden's qualified immunity for the mail policies. <u>Id.</u> Because Plaintiffs do not respond to Rhoden's argument that Count V has no allegations against him in his individual capacity, Plaintiffs have waived or abandoned the claim against Rhoden in his individual capacity, and the appropriate disposition is dismissal. <u>See, e.g.</u>, <u>MSP Recovery Claims, Series LLC v. NGM Insurance Co.</u>, No. 3:19-cv-128-MMH-JRK, 2021 WL 1172810, at *2 (M.D. Fla. Mar. 29, 2021) (collecting cases). Accordingly, Count V against Rhoden in his individual capacity is dismissed.

4. Phone Call Policies (Count VI)

---

[11] Summarizing Plaintiffs' claims, Rhoden states that Counts V and VI are only brought against Rhoden in his official capacity. (Doc. 28 at 2). In his argument, Rhoden states "Plaintiffs do not allege that [Rhoden], [Crews], or [Blue] were personally involved in any of the alleged actions that form the bases for Plaintiffs' legal mail or legal call claims in Counts V and VI." <u>Id.</u> at 4. Thus, it is unclear if Rhoden is arguing that Plaintiffs do not state a claim for his personal involvement in Counts V and VI, or if Rhoden has inadvertently overlooked that Plaintiffs bring Counts V and VI against him in both his official and individual capacities. Regardless of Rhoden's intentions, the Court's analysis is the same because Plaintiffs do not mention this issue in their Response. <u>See generally</u> (Doc. 35).

[12] Rhoden does not argue he is entitled to qualified immunity specifically for Counts V and VI; rather, he generally asserts the qualified immunity defense for all of Plaintiffs' claims against him in his individual capacity. <u>See generally</u> (Doc. 28).

As discussed, the ACLU and its detained clients, including Encarnacion, have First Amendment rights to communicate with each other, Mitchell, 10 F.4th at 1230; Thornburgh, 490 U.S. at 407, but a prison regulation may impinge on those rights "if it is reasonably related to legitimate penological interests." Pesci II, 935 F.3d at 1165–66 (quoting Turner, 482 U.S. at 89).

As with Count V, Rhoden, in his individual capacity, argues that Plaintiffs do not allege that he was personally involved in the issues alleged in Count VI, and that he is entitled to qualified immunity. See generally (Doc. 28). As Plaintiffs do not respond to this argument, Count VI against Rhoden in his individual capacity is dismissed.

### D.   Official Capacity Claims

All six Counts are brought against Rhoden in his official capacity. Suits against municipal officers sued in their official capacities are "functionally equivalent" to suits against the municipality the officer represents. Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991). Although municipalities may be sued under § 1983, they cannot be held vicariously liable for their employees' actions. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Rather, the municipality itself must cause the purported § 1983 violation. City of Canton v. Harris, 489 U.S. 378, 385 (1989). Thus, to impose § 1983 liability on a municipality, Plaintiffs must show (1) that they suffered a constitutional deprivation under "color of state law" and (2) that the deprivation was the result

26

of "an official government policy, the action[] of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." <u>Denno v. Sch. Bd. of Volusia Cnty.</u>, 218 F.3d 1267, 1276 (11th Cir. 2000) (citations omitted).

As to Counts I and III, there is no constitutional violation alleged so there can be no official capacity liability. As to Counts II and IV, Plaintiffs have failed to allege that the alleged retaliation was a result of a government policy, custom, or practice. Plaintiffs have sufficiently alleged constitutional violations in Counts V and VI regarding legal mail and phone call policies and have sufficiently alleged that the constitutional violations were a result of government policies, customs, or practices. <u>See</u> (Doc. 15 ¶ 204) ("Defendant Rhoden is responsible for the adoption and implementation of the challenged legal mail policies.") and <u>id.</u> ¶ 214 ("Defendant Rhoden is responsible for the adoption and implementation of the pattern, practice, and policy of refusing to provide access to confidential legal calls."). Thus, Rhoden's official capacity Motion is due to be granted only as to Counts I–IV and denied as to Counts V and VI.

## IV.   CONCLUSION

Accordingly, it is hereby

**ORDERED:**

1.   Rhoden, Crews, and Blue's Motion to Dismiss (Doc. 28) is **GRANTED IN PART AND DENIED IN PART**. The Motion is granted as to Counts I, III, V, and VI, and those Counts are dismissed with prejudice as to these Defendants in their individual capacities. To the extent Counts III−VI are brought on behalf of unascertained prospective clients, Counts III−VI are **DISMISSED for lack of standing without prejudice.** The Motion as to Counts II and IV is denied.

2.   Rhoden's Motion to Dismiss (Doc. 27) is **GRANTED IN PART AND DENIED IN PART**. The Motion is granted as to Counts I−IV and those Counts are dismissed with prejudice against Rhoden in his official capacity. The Motion is denied as to Counts V and VI against Rhoden in his official capacity.

3.   BCCMC's Motion to Dismiss (Doc. 26) is **GRANTED**. Plaintiffs' claims against BCCMC are **DISMISSED with prejudice.**

4.   Thus, Counts II and IV will go forward against Defendants Rhoden, Crews, and Blue in their individual capacities. Counts V and VI will go forward against Rhoden in his official capacity. Plaintiffs are already proceeding on an Amended Complaint (Doc. 15). The Court has determined that any further amendment to the dismissed counts would be futile and that the case is positioned to go forward with the remaining Counts. Answers from the remaining Defendants to the remaining Counts are due **no later than September 30, 2024**.

**DONE AND ORDERED** in Jacksonville, Florida, the 11th day of September, 2024.



TIMOTHY J. CORRIGAN
United States District Judge

jcd
Copies:

Counsel of record